DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Larry L. Williams, appeals his conviction out of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Williams was indicted in case number 2006-03-0853 on one count of possession of cocaine and one count of possessing criminal tools for acts occurring on or about September 22, 2005. Williams was indicted in case number 2005-12-4617 on one count of trafficking in cocaine, two counts of possession of cocaine, one count of possessing criminal tools, and one count of driving under suspension, *Page 2 
all for acts occurring on or about December 27, 2005.[1] The cases were scheduled together for trial. Williams filed a motion to sever cases 2005-12-4617 and 2006-03-0853. The trial court denied the motion immediately prior to the commencement of trial.
 {¶ 3} The cases jointly proceeded to trial. At the conclusion of trial, the jury found Williams guilty of both counts in case number 2006-03-0853 and guilty of all counts in case number 2005-12-4617, except for one possession of cocaine charge. The trial court sentenced Williams accordingly. Williams appeals, raising three assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY NOT SEVERING THE [TWO] SEPARATE DRUG CASES FROM EACH OTHER."
 {¶ 4} Williams argues that the trial court erred by denying his motion to sever his two separate drug cases. This Court disagrees.
 {¶ 5} Williams filed his motion to sever on August 31, 2006. The trial court orally denied the motion on the record immediately prior to the *Page 3 
commencement of trial on December 7, 2006. Williams did not renew his motion at any time after the commencement of trial.
 {¶ 6} This Court has held:
 "[W]hen [a] motion for severance was made prior to trial and was not renewed at the completion of the State's case in chief, or at the conclusion of all the evidence, it is deemed waived. * * * [E]ven if an appellant filed a pretrial motion to sever, failure to renew that motion at the close of the State's evidence or at the close of all of the evidence waived any previous objection to the joinder of [the] offenses for trial, thereby failing to preserve the issue for appeal." (Internal citations and quotations omitted.) State v. Morgan, 9th Dist. No. 22848, 2006-Ohio-3921, at ¶ 11.
 {¶ 7} Because Williams failed to renew his motion to sever, this Court finds that he has waived the issue and is precluded from raising it on appeal. Williams' first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING THE BATSON CHALLENGE RAISED BY THE DEFENDANT-APPELLANT DURING JURY SELECTION."
 {¶ 8} Williams argues that the trial court erred by denying his challenge of the State's peremptory challenge to the sole male African-American juror pursuant to Batson v. Kentucky (1986),476 U.S. 79. This Court disagrees.
 {¶ 9} Under Batson, a criminal defendant may raise a prima facie case of purposeful racial discrimination in the selection of the jury by showing that he belongs to a cognizable racial group, that the prosecution excluded members of the defendant's race, and that those facts and other circumstances raise an inference *Page 4 
that the State used peremptory challenges to purposefully exclude members of the defendant's race. State v. Cook (1992),65 Ohio St.3d 516, 519. See, also, State v. Tillman (1997), 119 Ohio App.3d 449, 454. "The prosecutor's statements and actions during voir dire may refute this inference. If the trial court in its discretion decides that such an inference has arisen, the burden shifts to the state to articulate a neutral reason for excluding the prospective jurors." Cook,65 Ohio St.3d at 519, citing Batson, 476 U.S. at 96-98. Accordingly, this Court must review a transcript of the voir dire proceedings to determine whether the trial court has abused its discretion in its determination of the challenge.
 {¶ 10} This Court has held that it is the duty of the appellant to provide a transcript for appellate review because the appellant bears the burden of demonstrating error by reference to matters in the record.Murray v. Murray, 9th Dist. No. 06CA008982, 2007-Ohio-3301, at ¶ 4, citing State v. Skaggs (1978), 53 Ohio St.2d 162, 163. App.R. 9(B) requires the appellant to order from the court reporter any portion of the transcript which he deems necessary for the determination of assigned errors. "In the absence of a complete record, an appellant court must presume regularity in the trial court's proceedings."Tillman, 119 Ohio App.3d at 454.
 {¶ 11} In this case, after five of fourteen witnesses testified, the trial court noted that Williams had preserved his Batson challenge at the time the court excused the jury for a break. The prosecutor reiterated what the African-American *Page 5 
prospective juror had divulged, and stated that he did not excuse that prospective juror on the basis of his race. The trial court stated, "It was more than an excuser for cause." The court then noted that the State had raised its own Batson challenge to Williams' dismissal of a white prospective juror.
 {¶ 12} As in Tillman, from the transcript before us, it appears that the trial court determined, based on the voir dire proceedings, that Williams had failed to raise an inference of discrimination, finding rather that excusal was warranted for cause. "Without a complete transcript of the voirdire proceedings so as to review them as a whole, we cannot hold that the court below abused its discretion in concluding that the prosecutor's questions, and the prospective juror['s] answers thereto, refuted any inference of racially motivated exclusion of [the] juror." Tillman, 119 Ohio App.3d at 454-55. Williams' second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "DUE PROCESS IS DENIED AN ACCUSED WHERE THE CONVICTION HAS BEEN OBTAINED UPON EVIDENCE INSUFFICIENT AS A MATTER OF LAW AND THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Williams argues that his conviction is supported by insufficient evidence and is against the manifest weight of the evidence. This Court disagrees.
 {¶ 14} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the *Page 6 
test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 279.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.) Id. at paragraph two of the syllabus.
 {¶ 15} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. State v. Love, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶ 11. Rather,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340. *Page 7 
 {¶ 16} This Court has stated that "[sufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 17} Williams does not identify with specificity which convictions he is challenging. However, he frames his argument within the context of "the drug transactions." Williams makes no argument regarding his conviction for driving under suspension. Accordingly, this Court does not address that conviction. Rather, we limit our review to the convictions for possession of cocaine and possessing criminal tools, alleged to have occurred on or about September 22, 2005; and the convictions for trafficking in cocaine, possession of cocaine and possessing criminal tools, alleged to have occurred on or about December 27, 2005.
 {¶ 18} Williams was charged with possession of cocaine in violation of R.C. 2925.11(A), which states that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2901.22(B) states:
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 19} Williams was charged with possessing criminal tools in violation of R.C. 2923.24(A), which states that "[n]o person shall possess or have under the *Page 8 
person's control any substance, device, instrument, or article, with purpose to use it criminally." Pursuant to R.C. 2901.22(A):
 "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."
 {¶ 20} Williams was charged with trafficking in cocaine in violation of R.C. 2925.03(A)(2), which states:
 "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person."
Case No. 2006-03-0853 {¶ 21} Williams was indicted on one count of possession of cocaine and one count of possessing criminal tools based on acts alleged to have occurred on September 22, 2005.
 {¶ 22} Officer Michael Hill of the Akron Police Department ("APD") testified that he was dispatched to 879 Hazel Street, Akron, Ohio, on September 22, 2005, on a complaint of drug activity. He testified that he spoke with the owner of the house, who identified herself as Williams' girlfriend. Williams was at the house at the time.
 {¶ 23} Officer Hill testified as follows. Williams was upstairs in the house. His girlfriend, Kelly Hardwick, gave the police permission to search the residence. *Page 9 
Two other officers went upstairs and brought Williams downstairs. The officers recovered scales with crack cocaine residue on them from upstairs. The officers also recovered boots from an upstairs bedroom, and Williams admitted that the boots belonged to him. There was another male in the home who asserted that he did not live there but that he was Williams' friend.
 {¶ 24} Sergeant Allen Fite of the APD testified that he was also dispatched to the Hardwick home on September 22, 2005, on a complaint that a black male was selling crack cocaine out of that address. He further testified as follows. Ms. Hardwick denied any knowledge of drug sales out of the home. She admitted that her boyfriend, Wiliams, and his friend were in the house.
 {¶ 25} Sergeant Fite found jeans, shirts and shoes in an upstairs bedroom. He also saw a digital scale in plain view in a bag in the same bedroom. There was a white residue on the scale, which the police forensic laboratory determined to be cocaine. Sergeant Fite testified that, based on his training and experience, such scales are used to weigh cocaine and other drugs prior to distribution for sale. He further testified that cocaine is a Schedule II controlled substance. Sergeant Fite testified that upon further investigation the police determined that the scale belonged to Williams. No drug paraphernalia or drug tools were found on Williams' person.
 {¶ 26} Officer Kevin Williams of the APD testified that he was also checking on a drug complaint at 879 Hazel Street, Akron, Summit County, Ohio, *Page 10 
on September 22, 2005. He further testified as follows. When the police knocked on the door, they were met by Williams who refused to answer the door. The police called the landlady who arrived 40 minutes later. When the landlady knocked on the door, Ms. Hardwick allowed her and the police to enter. Ms. Hardwick then gave the police permission to search her home. The police found a scale with cocaine residue in the house. There was also cocaine residue found on a speaker in the living room. Williams was then arrested at the scene.
 {¶ 27} Officer Lionel Millender of the APD testified that he, too, responded to the complaint of possible drug activity at 879 Hazel Street on September 22, 2005. He further testified as follows. Williams and another black male were in the house. Officer Millender went upstairs and discovered numerous boxes of expensive male clothing and shoes. There was also an electronic scale in one of the bedrooms.
 {¶ 28} Officer Millender questioned Williams, who told him that he was unemployed and that the numerous boxes of clothing and shoes were his. The boxes of clothing and shoes were in the same general area as the scale, which had a residue of cocaine on it.
 {¶ 29} This Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of Williams. The weight of the evidence supports the conclusion that Williams possessed both cocaine and criminal tools, specifically a drug scale. A thorough review of the record compels this Court to *Page 11 
find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Williams of possession of cocaine and possessing criminal tools. This Court finds that Williams' convictions arising out of the events on September 22, 2005, are not against the manifest weight of the evidence. Having found that Williams' convictions are not against the weight of the evidence, this Court further necessarily finds that there was sufficient evidence to support the jury's verdict.
Case No. 2005-12-4617 {¶ 30} Williams was indicted on two counts of possession of cocaine, one count of possessing criminal tools and one count of trafficking in cocaine based on acts alleged to have occurred on December 27, 2005. The jury found Williams guilty of one count of possession of cocaine, as well as the charges of possessing criminal tools and trafficking in cocaine.[2]
 {¶ 31} Detective Tim Harvey of the APD testified that he was involved in an investigation on December 27, 2005, regarding a narcotic transaction that the police believed would occur at a Kentucky Fried Chicken restaurant on East Market Street in Akron, Summit County, Ohio. Detective Harvey further testified as follows. He was working surveillance, and he believed that a black male would *Page 12 
arrive with crack cocaine. A "source" was supposed to approach the suspect's vehicle and then signal if there were drugs in the suspect's car.
 {¶ 32} Detective Harvey observed the source approach the driver's side of the suspect's car, have a short conversation with the suspect, then walk away. The source signaled that there were drugs in the suspect's car, and Detective Harvey radioed the uniformed police officers who then "move[d] in for the take down."
 {¶ 33} Detective Harvey was then directed to leave and conduct surveillance at 282 North Adams, the address at which the police believed the suspect was living. The detective identified Williams as the suspect under investigation.
 {¶ 34} Detective Harvey helped secure the residence and participated in the search after the police obtained a search warrant. There was an older gentleman in the house, who identified himself as Williams' father.
 {¶ 35} Detective Michael Gilbride of the APD testified that he was working surveillance on December 27, 2005, at the East Market Street Kentucky Fried Chicken. He further testified as follows. Detective Gilbride was watching for a *Page 13 
suspect described as a black male, approximately five foot ten and arriving in a black Taurus. He identified Williams as the suspect. The detective was 70 yards away from the restaurant when a black Taurus pulled into the parking lot. He observed a black male driving and a white male passenger.
 {¶ 36} Detective Gilbride observed an information source approach the Taurus and engage in a short conversation. The source then walked away and signaled that there were drugs in the suspect's car. Detective Gilbride then ordered the uniformed police to move in. Both narcotics and U.S. currency were recovered from the vehicle.
 {¶ 37} Detective Chris Carney of the APD testified that he works with the Street Narcotics Uniform Detail as a dog handler. He further testified as follows. He was one of the officers who conducted an investigative stop of Williams on December 27, 2005. He had been informed that Williams was in possession of approximately one-half ounce of crack cocaine and was going to be in the parking lot of the Kentucky Fried Chicken on East Market Street.
 {¶ 38} When Detective Carney received a signal to move in, he approached a vehicle in the parking lot. Williams was the driver, although the detective approached the passenger side of the vehicle. The detective saw Williams "hunched over" in the car and he threw something to the passenger floorboards. The passenger tried to kick the item under the seat. The item was later discovered to be a can of Gunk Tire Sealant with a false bottom. *Page 14 
 {¶ 39} After Williams and his passenger were removed from the vehicle, Detective Carney searched the vehicle with his K-9, who alerted on the can of Gunk. Detective Carney unscrewed the bottom of the can and found 29 individually wrapped rocks of crack cocaine inside the can. Detective Carney testified that such cans are routinely used to traffic narcotics. A laboratory analysis and report confirmed that the rocks were 8.16 grams of crack cocaine.
 {¶ 40} Detective Carney was then sent to Williams' house at 282 North Adams Street, where he again used his K-9 to search. His search discovered some house keys and a couple razor blades with cocaine residue on them.
 {¶ 41} Sergeant Gerald Forney of the APD testified that he was working in uniform during the investigation of Williams on December 27, 2005. He further testified as follows. He and his partner were to be one of the arrest vehicles. He received a signal to move in on Williams and he pulled into the restaurant parking lot near the black Taurus. Sergeant Forney then approached the driver's side of the vehicle and had contact with Williams. He pulled Williams out of the vehicle and searched him. The police found $255.00 on Williams' person.
 {¶ 42} Sergeant Forney then went to Williams' residence, where he watched the house while awaiting a warrant to search the house. While awaiting the warrant, the police noticed a lot of foot traffic in and out of the house, so they secured the area. Once the police obtained a warrant to search Williams' home, Sergeant Forney found some surveillance cameras in the home, one aimed on the *Page 15 
front door and one aimed out a back window. There was a monitor in one of the bedrooms, which displayed the views from each camera. The Sergeant testified that, based on his experience, surveillance cameras have become quite common at drug locations.
 {¶ 43} Sergeant Jason Malick of the APD testified that he was involved in the drug investigation of Williams on December 27, 2005. He testified that he was working with Sergeant Forney during that investigation. He further testified as follows. He observed Detective Carney find crack cocaine in a false bottom can in Williams' car. He also later participated in the search of Williams' home. He testified that the back door of Williams' home was secured with wood and bolted shut. Sergeant Malick testified that, based on his experience, it is common for people who sell drugs out of their home to secure one or two doors in the house to keep others from robbing them and to make it harder for the police to get in through the door during a raid.
 {¶ 44} Sergeant Malick testified that he recovered several other false bottom or false top cans, as well as some thumb-sized Baggies, from Williams' home, all items that he would expect to be used in drug trafficking and drug possession. He testified that he also found Williams' state identification card in one of the bedrooms.
 {¶ 45} Sergeant Malick testified that he helped secure the passenger in Williams' car. The passenger was identified as Richie Cunningham, a skinny *Page 16 
white male. The police discovered that Cunningham also lived in Williams' home. The sergeant testified that it is very common for drug dealers to use individuals who are addicted to crack to take the fall for the dealers' drug activities. Therefore, drug dealers allow such people to live in their homes and accompany them during drug transactions.
 {¶ 46} Detective Joseph Danzy of the APD testified that he was also involved in the take down and subsequent search of Williams and his home. He further testified as follows. He saw Williams making furtive movements towards the center of the front seat of his vehicle as the police approached. He escorted Williams out of the vehicle and searched him because he was aware that Williams was known to carry a weapon.
 {¶ 47} At Williams' home, Detective Danzy found a spoon coated with cocaine residue underneath a couch in the living room. He testified that spoons are commonly used in making crack cocaine. This particular spoon appeared to the detective to have had some type of fire or flame put through it. He also witnessed Detective Carney find two razor blades with cocaine residue in Williams' home. Detective Danzy also found a paper with a series of numbers on it under the television in the living room. He testified that such documents are a common way for drug dealers to keep track of the money that customers owe them. *Page 17 
 {¶ 48} Detective Michael Schmidt of the APD testified that he had spoken with an information source on December 27, 2005, regarding Larry Williams. Detective Schmidt testified that he ordered the investigation based on the source's assertion that he could buy crack cocaine from Williams. Detective Schmidt wrote a citation for Williams after discovering that Williams' driver's license had been suspended.
 {¶ 49} Detective Schmidt testified that he is familiar with Richie Cunningham, Williams' passenger and housemate. The detective testified that he knows Cunningham to be a crack addict. He confirmed that it is common for drug traffickers to have addicts accompany them and live with them in an effort to distance themselves from criminal charges relating to their drug transactions.
 {¶ 50} Based on a thorough review of the record, this Court finds that this is not the exceptional case, where the evidence weighs heavily in favor of Williams. The weight of the evidence supports the conclusion that Williams possessed both cocaine and criminal tools. The weight of the evidence further supports the conclusion that Williams was trafficking in crack cocaine. A thorough review of the record compels this Court to find no indication that the jury lost its way and committed a manifest miscarriage of justice in convicting Williams of possession of cocaine, possessing criminal tools and trafficking in cocaine. This Court finds that Williams' convictions arising out of the events on December 27, 2005, are not against the manifest weight of the evidence. Having found that Williams' *Page 18 
convictions are not against the weight of the evidence, this Court further necessarily finds that there was sufficient evidence to support the jury's verdict. Williams' third assignment of error is overruled.
 III. {¶ 51} Williams' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 19 
Costs taxed to appellant.
SLABY, P. J. CONCURS
[1] Williams also references and assigns error in regard to charges brought against him in case number 2005-12-4426, but his notice of appeal does not list that case number. Accordingly, this Court does not address any assignments of error as they may relate to matters in case number 2005-12-4426.
[2] Williams was also indicted and convicted of one count of driving under suspension, but he does not challenge that conviction on appeal. Accordingly, we decline to address that conviction.