[Cite as *State v. Allen*, 2012-Ohio-249.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No.    25349 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DAVARIUS CHARLES ALLEN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No.    CR 09 06 1764 (A) |

DECISION AND JOURNAL ENTRY

Dated: January 25, 2011

CARR, Presiding Judge.

{¶1}    Appellant, Davarius Allen, appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    On June 15, 2009, Allen was indicted on four counts of aggravated robbery, felonies of the first degree; two counts of aggravated burglary, felonies of the first degree; two counts of felonious assault, felonies of the second degree; and two counts of rape, felonies of the first degree, each of these ten counts containing a firearm specification.  Allen was further indicted on one count of felonious assault on a peace officer, a felony of the first degree; one count of disrupting public services, a felony of the fourth degree; one count of receiving stolen property, a felony of the fifth degree; and one count of theft, a felony of the fifth degree.  He pleaded not guilty to all charges at arraignment.

{¶3}    On July 8, 2009, a supplemental indictment was filed, charging Allen with four counts of aggravated robbery, felonies of the first degree; and one count of aggravated burglary, a felony of the first degree, each of these five counts containing a firearm specification.  He was further indicted on four counts of aggravated menacing, misdemeanors of the first degree.  Allen pleaded not guilty to the charges in the supplemental indictment at arraignment.

{¶4}    On September 9, 2009, Allen filed the following: a motion to suppress all evidence obtained during a search of his residence, conducted on June 3, 2009; a motion to suppress all statements obtained during his interrogation, detention and arrest, and all evidence derived as a result of his alleged unlawful interrogation, detention and arrest; and a motion to sever various counts in the indictment for purposes of trial.  The trial court held a hearing on the motions and subsequently issued an order denying them.

{¶5}    Prior to trial, the State dismissed the sole counts of disrupting public services and theft, and the four counts of aggravated menacing.  The matter proceeded to trial before a jury.  At the conclusion of trial, the jury found Allen guilty of fifteen of the remaining charges, plus the corresponding firearm specifications.   The jury acquitted Allen of one count of felonious assault and the charge of felonious assault on a peace officer.  The trial court classified Allen as a Tier III sex offender and sentenced him to an aggregate term of forty-six years in prison.  Allen filed a timely appeal, raising four assignments of error for review.   This Court rearranges some assignments of error to facilitate review.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS STATEMENTS[.]

{¶6}    Allen argues that the trial court erred by denying his motion to suppress oral statements made during his custodial interrogation.  Specifically, Allen argues that the police did

not give him his *Miranda* (*v. Arizona*, 384 U.S. 436 (1966)) warning prior to questioning and that his incriminating statements were not made voluntarily with an understanding of his rights. This Court disagrees.

{¶7} Regarding the relevant standard of review, this Court has stated:

"An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. The trial court acts as the trier of fact during a suppression hearing, and is therefore, best equipped to evaluate the credibility of witnesses and resolve questions of fact. Accordingly, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." (Emphasis omitted.) (Internal citations omitted.) *State v. Swan*, 9th Dist. No. 22939, 2006-Ohio-2692, at ¶8.

{¶8} "The Fifth Amendment to the United States Constitution provides persons with a privilege against compelled self-incrimination, which is applicable against the states through the Due Process Clause of the Fourteenth Amendment." *State v. Antoline*, 9th Dist. No. 02CA008100, 2003-Ohio-1130, at ¶12, citing *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). This Court has clearly enunciated the relevant considerations regarding the suppression of a criminal defendant's confession:

"[T]he Due Process Clause of the Fourteenth Amendment requires the exclusion of confessions that are involuntarily given by an accused. *Dickerson v. United States*, 530 U.S. 428, 433 (2000); *State v. Evans*, 144 Ohio App.3d 539, 560 (2001). The test under this due process analysis is 'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession. The due process test takes into consideration 'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.' *Dickerson*, 530 U.S. at 434, quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The totality of the circumstances that a court should consider include 'the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' *State v. Edwards*, 49 Ohio St.2d 31, paragraph two of the syllabus (1976), vacated on other grounds, 438 U.S. 911 (1978)." *Antoline* at ¶21.

{¶9} These same considerations are equally applicable to a determination whether Allen understood and waived his *Miranda* rights. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, at ¶57. "[E]vidence of police coercion or overreaching is necessary for a finding of involuntariness[.]" *State v. Hill*, 64 Ohio St.3d 313, 318 (1992), citing *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). Furthermore, "[a]bsent evidence that a defendant's will was overborne and that his capacity for self-determination was critically impaired because of coercive police conduct, the decision of a suspect to waive his right to Fifth Amendment privilege against self-incrimination is considered voluntary." *State v. Wooden*, 9th Dist. No. 23992, 2008-Ohio-3629, at ¶7, citing *State v. Dailey*, 53 Ohio St.3d 88, 91-2 (1990).

{¶10} The Fifth Amendment right against self-incrimination extends to "informal compulsion exerted by law-enforcement officers during in-custody questioning." *Miranda*, 384 U.S. at 461. However, an exception exists for questions designed merely to elicit biographical information which is reasonably related to booking or other administrative concerns of the police. See *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, at ¶33, citing *Pennsylvania v. Muniz*, 496 U.S. 582, 601-602 (1990).

{¶11} At the hearing on the motion to suppress, Lieutenant James Phister of the Akron Police Department ("APD") testified that Allen was arrested on June 3, 2009, in conjunction with various crimes committed on May 13 and 28, and June 3, 2009. He testified that Allen cut his hands and legs on a barbed wire fence while fleeing the scene of the June 3 incident, and he was transported to a hospital for treatment prior to being transported to the police station for questioning. After being placed in an interview room at the police station, Lt. Phister testified that he and Detective Rich Morrison verified Allen's name, address, date of birth, and social security number prior to reading Allen his *Miranda* rights. These questions constituted nothing

more than an attempt to obtain biographical information for administrative purposes and did not, therefore, violate Allen's constitutional rights. See *Hale* at ¶33. Allen concedes that the police read him his *Miranda* rights prior to any further questioning.

{¶12} The State admitted an audio recording of the custodial interview with Allen. The recording demonstrates that immediately after obtaining general booking or identification-type information from Allen, the police read him his *Miranda* rights. Lt. Phister testified that officers of the APD always read the rights from a card and never simply recite them from memory. Allen asserted prior to any substantive questioning that he understood each of the following specific rights: that he had the right to remain silent; that anything he said could be used against him in a court of law; that he had the right to have an attorney present during questioning; that he had the right to have an appointed attorney if he could not afford one; and that he had the right to exercise any and all of these rights at any time during the interrogation. Approximately halfway through the interrogation, Allen evaded answering a question in a forthright manner. The police informed him that this was the time that they asked the questions and he answered. Allen replied that he thought he did not have to answer any questions. The officer replied, "You don't." Instead of declining to answer any further questions, however, Allen asked the officer to repeat the last question he asked.

{¶13} Allen asserted that he understood his *Miranda* rights as read to him by the police. He then agreed to answer the officers' questions regarding the three criminal incidents. He never invoked his right to have an attorney present. When he attempted to evade answering a question by informing the officers that he thought he did not have to answer any questions, the police clearly informed him, "You don't." Nevertheless, he continued to answer and even requested that the officer repeat the last question asked. Allen was cooperative and answered the questions

coherently. There was no indication that his recent medical treatment for cuts on his hands and legs had impaired his mental faculties. Based on the totality of the circumstances, there was nothing to indicate that Allen's will had been overborne so as to render his statements involuntary. Allen's first assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE GATHERED PURSUANT TO A DEFECTIVE SEARCH WARRANT[.]

{¶14} Allen argues that the trial court erred by denying his motion to suppress evidence seized during a search of his home because (1) the search warrant was vague, and (2) the affiant who submitted the affidavit in support of the search warrant "was not sure of the accuracy of the information[.]" This Court disagrees.

{¶15} This Court reviews the trial court's ruling on a motion to suppress pursuant to the standard enunciated above. *See Swan* at ¶8.

{¶16} Allen first argues that the search warrant itself was defective because it was vague in that it failed to describe the property to be seized. A review of the search warrant demonstrates, however, that it clearly describes both the location of the search and specific items to be seized.

{¶17} Allen next argues that the affiant, Lt. Phister, was not sure of the accuracy of the information he provided in support of the warrant. At the hearing on the motion to suppress, however, Lt. Phister testified regarding his investigation of a series of aggravated burglaries, aggravated robberies, and sexual assaults which led the police to suspect and arrest Allen. At no time during the suppression hearing did Lt. Phister testify that he was unsure regarding the accuracy of information he provided in his affidavit in support of the search warrant. The

recording of Allen's interrogation was admitted into evidence during the hearing. Lt. Phister and Det. Morrison both informed Allen that they already knew about his involvement in a significant number of recent crimes. There was no evidence presented during the hearing to rebut those statements. Accordingly, there was competent, credible evidence to demonstrate that Lt. Phister, who submitted the affidavit in support of the search warrant, was aware of the accuracy of the facts underlying the warrant.

{¶18} Allen correctly asserts that warrants may be issued only upon probable cause evidenced by an oath or affirmation. He fails, however, to discuss how that law is applicable to his argument. Assuming that his argument can be construed as an assertion of a lack of probable cause underlying the warrant, that argument too must fail.

{¶19} The Fourth Amendment to the United States Constitution prohibits only unreasonable searches and seizures, not every search and seizure. The United States Supreme Court has held that "before a warrant for either arrest or search can issue [the Fourth Amendment probable-cause requirements] require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant." *Whitely v. Warden*, 401 U.S. 560, 564 (1971).

{¶20} Crim.R. 41(C) addresses the issuance of search warrants and states in relevant part: "A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record * * *. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located." Crim.R. 41(C)(1). The judge shall issue the search warrant upon determining that probable cause for the search exists. Crim.R. 41(C)(2). The rule further

provides that "[t]he finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." *Id.*

{¶21} A court reviewing the sufficiency of probable cause in a submitted affidavit should not substitute its judgment for that of the issuing judge. *State v. Tejada*, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶7, citing *State v. George*, 45 Ohio St.3d 325 (1989), at paragraph two of the syllabus. Rather, the duty of a reviewing court is to determine whether the magistrate or judge who issued the search warrant had a substantial basis for concluding that probable cause existed. *George*, 45 Ohio St.3d at paragraph two of the syllabus. Great deference is to be given to the issuing judge's determination and doubtful or marginal cases are to be resolved in favor of upholding the validity of the warrant. *State v. Cash*, 9th Dist. No. 20259, 2001 WL 251353 (Mar. 14, 2001), citing *George*, 45 Ohio St.3d at paragraph two of the syllabus.

{¶22} "[P]robable cause is the existence of circumstances that warrant suspicion." (Quotations and citations omitted). *Tejada* at ¶8. Therefore, "the standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires only a showing that a probability of criminal activity exists." (Quotations omitted). *Id. See also*, *George*, 45 Ohio St.3d at 329. Furthermore, courts view the totality of the circumstances in making probable cause determinations. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The *Gates* court elaborated: "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And

the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for … conclud[ing] that probable cause existed." (Internal quotations omitted.) *Id*. at 238-39.

{¶23} Allen argues that "[t]here was no description of property to be seized and the description of Appellant was not accurate." For the sake of this discussion, we must presume that he is referring to the information in Lt. Phister's affidavit in support of the search warrant.

{¶24} Lt. Phister averred in paragraph 19 of his affidavit that he was seeking a search warrant to search Allen's home for certain items associated with recent crimes, specifically, a "Visa credit card in the name of S. Gurkamal Badyal, a dark-blue coat, hooded and trimmed with gray and black fur, firearms, a red mesh clothing hamper, a glass soda bottle, a 17 inch flat-screen TV, a[n] Xbox and Playstation 2 video game system and any other evidence of Receiving Stolen Property, Aggravated Robbery, Aggravated Burglary and Sexual Assault[.]" The specific list of items to be seized was based on Lt. Phister's sworn statements regarding his investigation of recent criminal activity, including items alleged to have been stolen at gunpoint from various victims and a bottle allegedly used to perpetrate a sexual assault on one of the victims. Clearly, Allen's assertion that there was no description of the property to be seized during the search is erroneous.

{¶25} Lt. Phister averred that witnesses to one criminal incident described the perpetrator as "a black male, approximately 5'6" to 5'7" wearing dark jeans, * * * a blue bandana [and] armed with a handgun[.]" A victim in another incident described the perpetrator as "a black male, 5'6", skinny, wearing dark jeans, a blue bandana and a dark blue hooded coat, trimmed with gray and black fur * * * holding a handgun[.]" Lt. Phister averred that a credit card stolen during the first incident was used at a store after which a person in a distinctive dark-blue coat trimmed in gray and black fur drove away in a distinctive car. Lt. Phister averred that,

during a canvas of the area, he observed the same distinctive car parked outside a residence and determined that the vehicle was registered to Gloria Allen, whose sons Davarius and Demetris were living at that residence. Lt. Phister averred that BMV records indicate that Allen is 5'4" and 135 pounds and that his description is "consistent with the physical description given by the victims involved in both incidents." Based on a totality of the circumstances, this Court cannot conclude that Lt. Phister's description of Allen in his affidavit was not accurate. As a result, we conclude that the trial court properly determined that the issuing judge had a substantial basis to suspect that contraband or evidence of a crime would be found at Allen's residence. Accordingly, the trial court did not err by denying the motion to suppress.

{¶26} Allen's third assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO SEVER COUNTS IN THE INDICTMENT[.]

{¶27} Allen argues that the trial court erred by denying his motion to sever counts in the indictment. This Court disagrees.

{¶28} Allen moved to sever counts in the indictment pursuant to Crim.R. 14 on the ground that joinder of the offenses in the indictment for trial would be unfairly prejudicial. On appeal, Allen argues that the trial court erred by denying his motion to sever in reliance on Crim.R. 8 on the grounds that the offenses were not based on the same acts or transactions or were not based on acts or transactions which constituted a common scheme or plan. Although both rules offer grounds for the severing of offenses or defendants, they are distinct in their application both at the trial court level and on appeal. *See State v. Williams*, 9th Dist. No. 23560, 2008-Ohio-1048, at ¶53 (Dickinson, J., concurring).

{¶29} Allen failed to move the trial court to sever counts in the indictment pursuant to Crim.R. 8. Therefore, he has forfeited this argument on appeal. *State v. Gunner*, 9th Dist. No. 07CA0074-M, 2008-Ohio-4942, at ¶22, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶23. Furthermore, he has not argued plain error or presented any reason why this Court should address this issue for the first time on appeal. *Gunner* at ¶22. Allen's second assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO MAXIMUM CONSECUTIVE SENTENCES[.]

{¶30} Allen argues that the trial court erred by sentencing him to maximum, consecutive sentences without making the proper factual findings. This Court disagrees.

{¶31} The law in regard to this issue is well settled. The Ohio Supreme Court clearly held in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, at paragraph seven of the syllabus: "Trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." The Ohio Supreme Court more recently clarified: "Trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, at paragraph three of the syllabus. In this case, Allen's sentences fall within the applicable statutory ranges. Accordingly, the trial court did not err in imposing sentence. Allen's fourth assignment of error is overruled.

III.

{¶32} Allen's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

ISABELLA DIXON, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.