[Cite as *State v. Chesrown*, 2012-Ohio-2476.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26019 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| WILLIAM CHESROWN | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 10 05 1387 |

DECISION AND JOURNAL ENTRY

Dated: June 6, 2012

Per Curiam.

{¶1} Defendant-Appellant, William Chesrown, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} In March 2010, the police were called to Tallmadge Middle School by a Children's Services caseworker to investigate an allegation of sexual abuse. The victim, 13 year old M.G., along with three of her siblings had been living with Chesrown. M.G. testified that she moved out of Chesrown's home when she discovered recordings of her taking showers on his cell phone. M.G. testified that when she found the recordings of her on his phone she deleted them and threw the phone at Chesrown. M.G. also testified that on a prior occasion she was asleep in Chesrown's bed and had awakened when he touched her "on [her] private parts."

{¶3} After meeting with the victim, the police and the caseworker went to Chesrown's residence to talk to him about the allegations. Upon knocking on the door, the officers were

greeted by Michael Grimmitt, an adult tenant. Grimmitt informed the officers that Chesrown was not home. Grimmitt placed a phone call to Chesrown and explained that the police were at the house and requested that Chesrown come home. Grimmitt invited the officers inside to wait for Chesrown. No search was conducted at this time.

{¶4} Chesrown arrived home within 30 minutes and consented to a search of the home. Chesrown provided both verbal and written consent. He also assisted the officers in their search by unlocking areas in the house. The police confiscated video tapes and other electronic media from Chesrown's bedroom. Chesrown voluntarily followed the police to the station to answer questions.

{¶5} A few months later, Chesrown was indicted on five counts: one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), two counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1), and two counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3).

{¶6} After he was indicted, Chesrown moved to suppress all of the evidence found in the search of his home. Chesrown argued that his consent to the search was not given voluntarily. The trial court held a suppression hearing and overruled Chesrown's motion to suppress. The trial court found that Chesrown knowingly and voluntarily waived his Fourth Amendment right against a warrantless search of his home and had consented to the search.

{¶7} A jury convicted Chesrown of all five counts and the trial court sentenced Chesrown to seven years in prison.

{¶8} Chesrown now appeals from his convictions and raises six assignments of error for our review. To facilitate the analysis, we rearrange the assignments of error.

II

Assignment of Error Number Four

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S MOTION TO SUPPRESS.

{¶9}    In his fourth assignment of error, Chesrown argues that the trial court erred in denying his motion to suppress.  Specifically, Chesrown argues that the warrantless search of his home was a violation of his Fourth Amendment right because his consent was not given voluntarily.  We disagree.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Fanning*, 1 Ohio St.3d 19 (1982).  Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  This Court, therefore, will first review the trial court's findings of fact to ensure those findings are supported by competent, credible evidence.  This Court will then review the trial court's legal conclusions de novo.

{¶10}  The Fourth Amendment of the United States Constitution protects persons against unreasonable searches and seizures.  While search warrants are preferred, a valid consent will make a warrantless search constitutional.  *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973).  "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances."  *Ohio v. Robinette*, 519 U.S. 33, 40 (1996), citing *Bustamonte,* 412 U.S. at 248-249.  The State bears the

burden of proving that consent was given freely and voluntarily and was not obtained through coercion. *State v. Posey*, 40 Ohio St.3d 420, 427 (1998).

{¶11} Chesrown argues that his consent was coerced because of the number of police officers present and because he did not know the reason for the search. Present at the house when Chesrown arrived were three uniformed police officers, Sergeant Stacey Hurley, dressed in plain clothes, and a social worker from Children's Services. The record does not indicate, however, that the number of officers present influenced Chesrown's decision to consent to the search. Chesrown signed the written consent form in the presence of Sergeant Hurley and one uniformed officer. Sergeant Hurley testified that Chesrown appeared to be "cooperative, calm, [and] laid back" throughout the process. Chesrown testified that he had previously been through an investigation with the police and Children's Services in an unrelated matter and when asked by an officer if the police could "look around," Chesrown responded: "Sure. No problem."

{¶12} Chesrown gave both verbal and written consent to the search of his home. Further, Chesrown physically unlocked areas in his home to assist the police in their search. Chesrown testified that he was cooperative because he did not know what the officers were looking for. This alone does not make his consent to search involuntary. *See Bustamonte,* 412 U.S. at 227 (While knowledge of the right to refuse consent is one factor in determining voluntariness, voluntariness is determined by a totality of the circumstances). Considering the totality of the circumstances, we find that the State has met its burden of proving that Chesrown's consent was freely and voluntarily given.

{¶13} To the extent that Chesrown argues that the police were not lawfully in the house prior to his arrival, Chesrown did not raise this argument below. The only issue presented to the trial court at the suppression hearing was whether Chesrown's consent was voluntary.

Therefore, we will not address for the first time on appeal whether officers were lawfully in his house. *See State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus.

**{¶14}** For the foregoing reasons, Chesrown's fourth assignment of error is overruled.

Assignment of Error Number One

PLAIN ERROR OCCURRED DURING THE TRIAL THAT AFFECTED THE OUTCOME OF THE TRIAL AND VIOLATED APPELLANT'S RIGHTS TO DUE PROCESS AS GUARANTEED BY U.S. CONST. AMEND V.

**{¶15}** In his first assignment of error, Chesrown challenges the admittance of certain expert testimony.

> Evid.R. 702(B) provides that a witness may qualify as an expert by reason of his or her specialized knowledge, skill, experience, training, or education. Neither special education nor certification is necessary to confer expert status upon a witness. The individual offered as an expert need not have complete knowledge of the field in question, as long as the knowledge he or she possesses will aid the trier of fact in performing its fact-finding function. Pursuant to Evid.R. 104(A), the trial court determines whether an individual qualifies as an expert, and that determination will be overturned only for an abuse of discretion.

(Internal citations omitted.) *State v. Hartman*, 93 Ohio St.3d 274, 285 (2001). The alleged errors were not preserved at trial and, therefore, are subject to plain error review. To prevail on a claim of plain error, Chesrown must show (1) that there was an error, (2) that the error was obvious or plain, and (3) that the error affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

Testimony of Nurse Abbott

**{¶16}** Chesrown argues that the trial court erred in permitting Donna Abbott, a pediatric nurse practitioner at Children's Hospital, to testify that "90 percent of the time the [physical] exam [of a sexual abuse victim] is normal irregardless [sic] of the type of sexual abuse they're

describing." Specifically, Chesrown argues that the testimony was given without proper foundation. We disagree.

{¶17} A person may be qualified to testify as an expert based on knowledge he or she has gained through work experience. *See Hartman*, 93 Ohio St.3d at 285-288. Abbott has extensive experience working with children who are victims of abuse. Abbott testified that she has been a nurse for 37 years, the past 21 years of which she has spent with the child abuse clinic at Children's Hospital. Abbott testified that she has personally examined over 6,000 sexual abuse victims in her career. Abbott's extensive experience is sufficient to establish foundation for her expert testimony.

Testimony of Children's Hospital Social Worker Shrout

{¶18} Chesrown argues that the trial court erred in permitting Colleen Shrout, a social worker at Children's Hospital, to testify that it is not unusual for a child victim of sexual abuse to (1) not remember specific dates, (2) underreport what happened, and (3) delay reporting the abuse. Specifically, Chesrown argues that the testimony was given without proper foundation. We disagree.

{¶19} Shrout's testimony was based on her training and experience. Shrout is a licensed social worker and received advanced training in December 2010 and January 2011. Shrout had been working with sexual abuse victims at Akron Children's Hospital for five years and has handled over 200 cases.

{¶20} The record does indicate that Shrout based some of her testimony on research. Because neither the prosecution nor the defense inquired about the research to which Shrout was referring, we cannot review the reliability of the research. Assuming arguendo that the testimony was improperly admitted, however, the error does not survive plain error review. Chesrown

argues that Shrout's testimony is plain error because it removed the victim's credibility as an issue. Under the circumstances in this case, we disagree. Shrout's testimony was not the only evidence offered to support the victim's credibility. In fact, the victim herself took the stand and was subject to cross-examination. The trier of fact had the opportunity to observe her demeanor as she testified, and to make appropriate credibility determinations. *Compare State v. Boston*, 46 Ohio St.3d 108 (1989) (where the child victim of sexual abuse was not competent to testify at trial the pediatrician and psychologist that examined the victim were not permitted to testify that the victim's allegations were true). Because Chesrown cannot show that admitting Shrout's testimony amounts to a manifest miscarriage of justice, we decline to find plain error.

Testimony of Children Services Social Worker Kohrs

{¶21} Chesrown argues that the trial court erred in permitting Audrey Kohrs, a licensed social worker at Summit County Children Services, to testify about the truthfulness or credibility of the alleged victim. We disagree.

{¶22} Kohrs testified about how Summit County Children Services categorizes referrals.

A. * * * Any time we receive a referral, we have a disposition on that referral. And that can be three – there's three different types of dispositions.

Q. Can you explain those, please?

A. The first one would be unsubstantiated which means basically that it may have happened but we either – nobody's reporting it, they're denying, or that there's no collaterals that are supporting it.

Indicated is an option, too, and that means that we believe it happened but we may or may not be able to prove that it happened.

Substantiated means that through the course of our investigation, that we felt that we have enough information to substantiate or say that the concerns in the referral were true, thereby substantiating the report.

Kohrs testified that the disposition code on M.G.'s case was substantiated.

**{¶23}** In *Boston*, 46 Ohio St.3d 108, a three year old was the suspected victim of sexual abuse. A physician and psychologist examined the child and concluded that the child had been abused. *Id*. at 109. The child, because of her young age, was found to be incompetent to testify. *Id*. The physician and the psychologist testified that, in their expert opinions, the child was truthful in her statements to them and was not fabricating the claims of abuse. *Id*. at 128-129. The Ohio Supreme Court held that "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id*. at syllabus.

**{¶24}** The internal classification or disposition code used by Children's Services does not amount to testimony about the truthfulness of the victim's statements in violation of *Boston*. Children's Services conducts its own investigation and does not base its disposition code solely on a statement of the victim. Further, *Boston* is distinguishable because the victim in this case testified. Because admitting Kohrs' testimony was not an error, we cannot find plain error.

Testimony of Sergeant Hurley

**{¶25}** Chesrown argues that the trial court erred in allowing certain testimony from Sergeant Hurley. First, Chesrown argues that the court erred in allowing Sergeant Hurley to testify that she was familiar with Chesrown's residence because of previous allegations of sexual abuse. Specifically, Chesrown argues that this was impermissible testimony about Chesrown's sexual activities. We disagree.

**{¶26}** Sergeant Hurley testified that she was familiar with Chesrown's address because of previous allegations of sexual abuse and neglect in years past. Yet, Sergeant Hurley also testified that she did not recall ever speaking to Chesrown and that she did not believe he was ever present in the home when she responded to the previous calls. This testimony, reviewed in context, does not unfairly suggest that Chesrown was suspected or involved in prior unlawful

conduct. Sergeant Hurley's testimony, therefore, does not amount to impermissible character evidence.

{¶27} Second, Chesrown argues that the court erred in allowing Sergeant Hurley to testify that she was familiar with the grooming process that occurs in sexual abuse cases and that Chesrown's behavior fit that profile. Specifically, Chesrown argues that this testimony lacked foundation and was made in violation of *Boston*. We disagree.

{¶28} Sergeant Hurley attended the Cleveland Heights Police Academy and has 11 years of experience as a police officer, seven of which have been with the Tallmadge Police Department. Sergeant Hurley has attended "dozens of classes on child abuse, interviewing, neglect, [and] sexual abuse." Sergeant Hurley has interviewed hundreds of suspected child abuse victims. Sergeant Hurley testified that, based on her training and experience, in most cases there is evidence of a "grooming process." Sergeant Hurley further testified that based on her training and experience Chesrown fit the profile of grooming. Because Sergeant Hurley's testimony was based on her professional experience and training directly related to child sexual abuse cases, it was not lacking foundation. *See Hartman*, 93 Ohio St.3d at 285-288. Moreover, because her testimony did not directly or indirectly address the truthfulness of the victim's statement, her testimony does not implicate *Boston*.

{¶29} Lastly, Chesrown argues that the court erred in allowing Sergeant Hurley's testimony that she did not believe the children in the videotapes were aware that they were being recorded or that the children recorded each other. Specifically, Chesrown argues that the testimony was impermissible because it was not based on matters beyond the knowledge or experience possessed by lay persons. We agree, but conclude that the admission of Hurley's testimony does not rise to the level of plain error.

According to Evid.R. 702(A), an expert witness's testimony must either "relat[e] to matters beyond the knowledge or experience possessed by the lay person or dispe[l] a misconception common among lay persons." An expert witness "may not express an opinion upon matters as to which the jury is capable of forming a competent conclusion."

*Hill v. Wadsworth-Rittman Area Hosp.*, 185 Ohio App.3d 788, 2009-Ohio-5421, ¶ 19 (9th Dist.), quoting *Burens v. Indus. Comm.*, 162 Ohio St. 549 (1955), paragraph two of the syllabus.

**{¶30}** Having reviewed the videotapes it is clear that expert testimony was not necessary to help the jury conclude that the girls were unaware that they were being filmed or that they were not filming each other. Sergeant Hurley's expert testimony was inadmissible because it was not based on matters beyond the knowledge or experience possessed by lay persons. However, the admission of Sergeant Hurley's testimony does not rise to the level of plain error. In order to find plain error, the error must have affected substantial rights. *Barnes*, 94 Ohio St.3d at 27. "We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id.*

**{¶31}** The record indicates that the jury had ample opportunity to view the videotapes and to form its own conclusion about whether the children in the tapes were aware that they were being filmed or whether they were filming each other. Further, the jury had the testimony of T.C. and M.G. to consider. Both T.C. and M.G. appeared in the videotapes and testified that they were unaware that they were being recorded. Reviewing the record in its entirety, we cannot say that admitting Sergeant Hurley's testimony here affected the outcome of the trial. For this reason we do not find plain error.

**{¶32}** For the foregoing reasons, Chesrown's first assignment of error is overruled.

Assignment of Error Number Three

THE APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE BY HIS FAILURE TO OBJECT TO INADMISSIBLE CHARACTER EVIDENCE ALL IN VIOLATION OF APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL AND DUE PROCESS.

{¶33} In his third assignment of error, Chesrown argues that trial counsel was ineffective when he failed to object to the testimony detailed in his first assignment of error.

{¶34} A claim of ineffective assistance of counsel requires Chesrown to satisfy a two-prong test. First, he must prove that trial counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, Chesrown must "demonstrate that he was prejudiced by his trial counsel's deficient performance." *State v. Srock*, 9th Dist. No. 22812, 2006-Ohio-251, ¶ 21. Prejudice entails "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus.

{¶35} Because the testimony Chesrown has challenged was either properly admitted or admitted without prejudicial effect, Chesrown did not receive ineffective assistance of counsel. Chesrown's third assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT ERRED WHEN IT PERMITTED TESTIMONY OVER OBJECTION OF APPELLANT CONCERNING PREVIOUS ALLEGATIONS OF SEXUAL ABUSE INVOLVING APPELLANT, ALL IN VIOLATION OF APPELLANT'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE U.S. CONST. AMEND V.

{¶36} In his second assignment of error, Chesrown argues that the trial court erred in allowing testimony about a previous allegation of child pornography found on a computer at Chesrown's residence.

{¶37} Chesrown argues that trial counsel properly objected and preserved this issue for review. However, trial counsel objected to the testimony on the grounds that the report was overly prejudicial, irrelevant, and hearsay. Counsel did not object on the basis of other acts evidence. Chesrown now argues on appeal that the testimony was inadmissible evidence of prior bad acts. Chesrown has not argued that the trial court committed plain error nor has Chesrown presented any reason why this Court should address this issue for the first time on appeal. *State v. Allen*, 9th Dist. No. 25349, 2012-Ohio-249, ¶ 29.

{¶38} Chesrown's second assignment of error is overruled.

Assignment of Error Number Five

THE TRIAL COURT ERRED WHEN IT PERMITTED THE STATE TO INTRODUCE OTHER ACTS EVIDENCE AT HIS TRIAL IN VIOLATION OF U.S. CONST. AMEND V.

{¶39} In his fifth assignment of error, Chesrown argues that the trial court erred by admitting other acts evidence. Specifically, Chesrown argues that allowing evidence that he inappropriately touched M.S., an alleged prior victim of Chesrown, was improper other acts evidence and prejudicial. We disagree.

> "Scheme, plan or system" evidence is relevant in *two general factual situations*. First, those situations in which "other acts" form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment. * * * Identity of the perpetrator of a crime is the second factual situation in which "scheme, plan or system" evidence is admissible.

(Emphasis added.) *State v. Curry*, 43 Ohio St.2d 66, 72-73 (1975). Appellate courts have interpreted this language to mean that the Ohio Supreme Court has expressly limited the admissibility of "scheme, plan or system" evidence to these two factual situations. However, the use of the word "general" indicates that the Ohio Supreme Court was merely addressing these two examples, and its opinion does not operate to limit its application to only those

circumstances. There may be other factual situations where other acts evidence may be properly admitted to demonstrate a "scheme, plan or system."

**{¶40}** This Court has previously set forth the applicable analysis in *State v. Clay*, 9th Dist. No. 04CA0033-M, 2005-Ohio-6, ¶ 33-37. There, the trial court permitted the victim's sister to testify that the defendant had previously come to her bed at night and reached under her shirt and tried to fondle her breasts. The court permitted the testimony to show a scheme, plan or system because there were similarities between the sister's and the victim's accounts of molestation. "For both sisters, the offenses occurred late at night when Defendant thought that they would be sleeping, and for both victims the molestation occurred in a similar manner." *Id.* at ¶ 36. On appeal, this Court found no abuse of discretion in the trial court's admission of this testimony "for the limited purpose of demonstrating Defendant's plan or scheme." *Id.* at ¶ 37.

**{¶41}** Here, the State requested to present the testimony of M.S., an alleged prior victim of Chesrown, to demonstrate "common plan or scheme." The State also requested a limiting instruction. The testimony of M.S. demonstrated that there were similarities between her encounter with Chesrown and the victim's encounter. Both girls were underage, received gifts from Chesrown, and awoke to find him inappropriately touching them. This demonstrates a "common plan or scheme." *See State v. Travis*, 9th Dist. No. 06CA0075-M, 2007-Ohio-6683, ¶ 28 (holding that "evidence that a defendant sexually abused another victim in a similar manner is admissible to show a scheme, plan or system"); *State v. Guenther*, 9th Dist. No. 05CA008663, 2006-Ohio-767, ¶ 47 (prior victim's testimony was properly admitted to show "appellant used a similar modus operandi in his sexual approach to both women"); *State v. Liddle*, 9th Dist. No. 23287, 2007-Ohio-1820, ¶ 51-61; *State v. Ristich*, 9th Dist. No. 21701, 2004-Ohio-3086, ¶ 15-

25. *See also State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, ¶ 88-92 (8th Dist.) (Celebreeze, Jr., J., dissenting), appeal allowed, 131 Ohio St.3d 1471, 2012-Ohio-896.

{¶42} The other acts evidence was properly admitted and, therefore, the trial court did not abuse its discretion. Chesrown's fifth assignment of error is overruled.

<u>Assignment of Error Number Six</u>

THE CUMULATIVE NATURE OF THE PREJUDICIAL ERRORS IN THIS CASE CONSTITUTE A DENIAL OF DUE PROCESS IN VIOLATION OF U.S. CONST. AMEND V.

{¶43} In his sixth assignment of error, Chesrown argues that cumulative errors in the proceeding deprived him of his constitutional rights to due process. We disagree.

{¶44} Cumulative error exists only where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial." *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. "[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." *State v. Hill*, 75 Ohio St.3d 195, 212 (1996), quoting *United States v. Hasting*, 461 U.S. 499, 508-509 (1983). Moreover, "errors cannot become prejudicial by sheer weight of numbers." *Hill*, 75 Ohio St.3d at 212.

{¶45} After reviewing the record, we cannot say that Chesrown's trial was plagued with numerous errors or that his constitutional right to a fair trial was violated. Therefore, Chesrown's sixth assignment of error is overruled.

III

{¶46} Chesrown's assignments of errors are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

MOORE, J.
CONCURS.

CARR, J.
CONCURS IN JUDGMENT ONLY.

WHITMORE, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶47} With regard to the fifth assignment of error, the majority has concluded that the trial court properly admitted other acts evidence. I respectfully disagree. I believe the evidence was not admissible to prove common plan or scheme, but find the error to be harmless.

**{¶48}** Children's Services received notice of another potential victim, M.S., approximately two weeks after the victim, M.G., had met with Children's Services. M.S. testified that she would often ride with Chesrown in his tow truck when he was working. M.S. testified that one evening she fell asleep in the truck and awoke when Chesrown put his hand under her bra. It is unclear when this event took place and how it coincides with the events related to M.G.

**{¶49}** Evid.R. 404(B) prohibits evidence of other acts "to prove the character of a person in order to show action in conformity therewith." Evidence may be admissible to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B), *see also* R.C. 2945.59.

> Because R.C. 2945.59 and Evid.R. 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict. The rule and the statute contemplate acts which may or may not be similar to the crime at issue. If the other act does in fact "tend to show" by substantial proof any of those things enumerated, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, then evidence of the other act may be admissible.

(Internal citations omitted.) *State v. Broom*, 40 Ohio St.3d 277 (1988), paragraph one of the syllabus.

**{¶50}** Chesrown objected to the testimony of M.S. arguing her testimony was inadmissible evidence of other acts. The trial court overruled the objection, finding the evidence was admissible to show identity or common plan or scheme. In its brief, the State also argues that the testimony was admissible to show modus operandi.

Modus Operandi

**{¶51}** Other acts evidence may be admissible to establish identity by showing modus operandi. For other acts to be admissible as modus operandi identity must be at issue and the

other acts must form "a unique, identifiable plan of criminal activity." *State v. Jamison*, 49 Ohio St.3d 182 (1990), syllabus.

> A certain *modus operandi* is admissible not because it labels a defendant as a criminal, but because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator. Other-acts evidence is admissible to prove identity through the characteristics of acts rather than through a person's character. To be admissible to prove identity through a certain *modus operandi,* other-acts evidence must be related to and share common features with the crime in question.

*State v. Lowe*, 69 Ohio St.3d 527, 531 (1994). In *State v. Curry*, 43 Ohio St.2d 66, 73 (1975), the Court held that identity is not a material issue when the defendant admitted to having been with the victim but denied having had any sexual contact with her. *Id*. The defendant's "denial ***did not raise an identity question; it created, instead a factual dispute revolving around [the defendant's] conduct with***" the victim. (Emphasis added.) *Id*.

{¶52} Chesrown does not deny ever having been in bed with M.G. Chesrown only denies having had any sexual contact with M.G. Therefore, identity was not a material issue in this case. Because identity was not a material issue, the other acts evidence of Chesrown allegedly touching M.S. was not admissible under this exception.

Common Plan or Scheme

{¶53} There are two situations when evidence of other acts may be admissible to establish a common plan or scheme. First, when the other act is inextricably related to the crime charged. Second, when the other act is a similar crime that was committed close in time with the crime charged.

a.    Inextricably related

{¶54} Evidence of other acts may be admissible if the other acts are inextricably related to the crime charged. Other acts are inextricably related when the other acts "form part of the

immediate background of the alleged act which forms the foundation of the crime charged in the indictment. In such cases it would be virtually impossible to prove that the accused committed the crime charged without also introducing evidence of the other acts." *Curry*, 43 Ohio St.2d at 73.

**{¶55}** Other act evidence was admitted regarding allegations from M.S. that Chesrown touched her inappropriately while she was asleep in his tow truck. This is a factually separate occurrence from Chesrown touching M.G. while asleep in his bed. Based on the record, we are unable to determine if the acts are chronologically separate. The record is unclear as to the date Chesrown touched M.G. The record is also unclear as to the date Chesrown allegedly touched M.S. Because evidence of other acts is an exception and must be construed against admissibility, the evidence regarding allegations that Chesrown inappropriately touched M.S. should not have been admitted. This act is not inextricably related and, therefore, may not be admitted under this exception. *See State v. Thompson*, 66 Ohio St.2d 496, 498 (1981).

    b.    Similar crimes close in time

**{¶56}** The second situation where evidence of other acts may be admissible to establish a common plan or scheme occurs when identity is at issue. When identity is at issue other acts may be used "to show that [the defendant] has committed similar crimes within a period of time reasonably near to the offense on trial, and that a similar scheme, plan or system was utilized to commit both the offense at issue and the other crimes." *Curry* at 73. Because identity was not a material issue, the other acts evidence was not admissible under this exception.

Motive

**{¶57}** The other acts evidence was also not admissible to prove motive. As in *Curry*, the motive of sexual gratification was obvious and, therefore, was not a material issue. *Curry* at

71. Because motive was not a material issue, the other acts evidence was not admissible under this exception.

Harmless Error

{¶58} Despite other act evidence being improperly admitted at trial, Chesrown was not materially prejudiced. "Where 'the other admissible evidence, standing alone, constitutes overwhelming proof of guilt,' the allowance of testimony that is inadmissible under Evid.R. 404(B) is harmless." *State v. Watkins*, 9th Dist. No. 02CA008087, 2003-Ohio-1308, ¶ 14, quoting *State v. Hutton*, 53 Ohio St.3d 36, 41 (1990).

{¶59} The prosecution presented videos that were found either in Chesrown's bedroom or locked bedroom closet. The videos contained images of young girls that had been secretly recorded while using Chesrown's bathroom. The contents of the tapes appeared to span over a number of years. The prosecution also presented a letter Chesrown had written to M.G. apologizing for "being very stupid and creeping her out." The letter went on to say "[y]ou don't know how it makes me feel having you in a towel bending over looking for clothes and letting it fall, exposing yourself in front of me." The jury had the opportunity to hear from both the victim, M.G., and Chesrown. Considering the record in its entirety, the improper admission of evidence related to M.S. was harmless beyond a reasonable doubt.

{¶60} I would conclude that the trial court abused its discretion in admitting the other acts evidence, but would overrule Chesrown's fifth assignment of error because the error was harmless.

APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.