[Cite as *State v. Chesrown*, 2014-Ohio-680.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

WILLIAM A. CHESROWN

    Appellant

C.A. No.    26336

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 2010 05 1387

DECISION AND JOURNAL ENTRY

Dated: February 26, 2014

MOORE, Presiding Judge.

{¶1}    Defendant-Appellant, William Chesrown, appeals from the February 23, 2012 judgment entry of the Summit County Court of Common Pleas.  We affirm.

I.

{¶2}    The facts and procedural history of this matter are summarized in *State v. Chesrown*, 9th Dist. Summit No. 26019, 2012-Ohio-2476, ¶ 2-7, as follows:

> In March 2010, the police were called to Tallmadge Middle School by a Children's Services caseworker to investigate an allegation of sexual abuse. The victim, 13 year old M.G., along with three of her siblings had been living with [Mr.] Chesrown.  M.G. testified that she moved out of [Mr.] Chesrown's home when she discovered recordings of her taking showers on his cell phone. M.G. testified that when she found the recordings of her on his phone she deleted them and threw the phone at [Mr.] Chesrown. M.G. also testified that on a prior occasion she was asleep in [Mr.] Chesrown's bed and had awakened when he touched her "on [her] private parts."
>
> After meeting with the victim, the police and the caseworker went to [Mr.] Chesrown's residence to talk to him about the allegations. Upon knocking on the door, the officers were greeted by Michael Grimmitt, an adult tenant.  [Mr.] Grimmitt informed the officers that [Mr.] Chesrown was not home. [Mr.] Grimmitt placed a phone call to [Mr.] Chesrown and explained that the police

were at the house and requested that [Mr.] Chesrown come home. [Mr.] Grimmitt invited the officers inside to wait for [Mr.] Chesrown. No search was conducted at this time.

[Mr.] Chesrown arrived home within 30 minutes and consented to a search of the home. [Mr.] Chesrown provided both verbal and written consent. He also assisted the officers in their search by unlocking areas in the house. The police confiscated video tapes and other electronic media from [Mr.] Chesrown's bedroom. [Mr.] Chesrown voluntarily followed the police to the station to answer questions.

A few months later, [Mr.] Chesrown was indicted on five counts: one count of gross sexual imposition in violation of R.C. 2907.05(A)(4), two counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1), and two counts of illegal use of a minor in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3).

* * *

A jury convicted [Mr.] Chesrown of all five counts and the trial court sentenced [Mr.] Chesrown to seven years in prison.

* * *

{¶3} While his direct appeal was pending, Mr. Chesrown also filed a petition for post-conviction relief with the trial court. In his petition, Mr. Chesrown argued that his trial counsel was ineffective for two reasons: (1) failing to investigate certain records and reports in the possession of children services, and (2) failing to call Mr. Ronnie Hartline to testify regarding the creation of the video tapes. In response, the State argued that the petition should be dismissed because Mr. Chesrown merely speculated with regard to the contents of M.G.'s juvenile court records and the substance of any testimony Mr. Hartline might provide.

{¶4} The trial court dismissed Mr. Chesrown's petition without holding a hearing.

{¶5} Mr. Chesrown timely appealed, and raises one assignment of error for our consideration.

II.

## **ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED WHEN IT DISMISSED [MR. CHESROWN'S] PETITION FOR POST-CONVICTION [RELIEF] WITHOUT [A] HEARING.

**{¶6}** In his sole assignment of error, Mr. Chesrown argues that the trial court erred in not holding a hearing prior to denying his petition for post-conviction relief.

**{¶7}** We review a trial court's decision not to hold a hearing on a petition for post-conviction relief for an abuse of discretion. *State v. Houser,* 9th Dist. Summit No. 21555, 2003-Ohio-6811, ¶ 12. An abuse of discretion implies unreasonable, arbitrary, or unconscionable conduct by the court. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶8}** R.C. 2953.21(E) states, in relevant part, that a trial court is required to hold a hearing regarding a petition for post-conviction relief "[u]nless the petition and the files and records of the case show the petitioner is not entitled to relief[.]" This Court has explained that "[a] hearing is not automatically required for every petition for post-conviction relief." *State v. Sales,* 9th Dist. Summit No. 23498, 2007-Ohio-4136, ¶ 7. Rather, "the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavit and the files and records of this cause." *State v. Jackson*, 64 Ohio St.2d 107, 110 (1980).

**{¶9}** As stated above, Mr. Chesrown's petition for post-conviction relief raises the issue of ineffective assistance of counsel. To prove ineffective assistance of counsel, Mr. Chesrown must establish that (1) his counsel's performance was deficient, and (2) that, but for his counsel's deficient performance, there is a reasonable probability that the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). This Court may "analyze the prejudice prong of the *Strickland* test alone if such analysis will dispose of a

claim of ineffective assistance of counsel on the ground that the defendant did not suffer sufficient prejudice." *State v. Kordeleski,* 9th Dist. Lorain No. 02CA008046, 2003-Ohio-641, ¶ 37, citing *State v. Loza*, 71 Ohio St.3d 61, 83 (1994) (overruled on other grounds).

{¶10} During the trial proceedings, Mr. Chesrown's counsel spoke to Ronnie Hartline but did not call him as a witness. In his post-conviction relief motion, Mr. Chesrown averred his counsel was ineffective for failing to call Ronnie Hartline as a witness at Mr. Chesrown's trial because Ronnie Hartline committed the offenses at issue. He also contended that his counsel failed to properly investigate his case because there was exculpatory material in M.G's juvenile court file. The record before us indicates that Mr. Chesrown attached the following in support of his petition for post-conviction relief: (1) his own affidavit, (2) the affidavit of Ms. Patty Hartline, Ronnie Hartline's mother, and (3) several documents from M.G.'s juvenile court file. Mr. Chesrown had the initial burden to "submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and to establish that his defense was prejudiced by counsel's ineffectiveness." *Jackson* at syllabus. "General conclusory allegations as to counsel's ineffectiveness or broad assertions are inadequate as a matter of law to warrant an evidentiary hearing or support a finding of post-conviction relief." (Internal citations and quotations omitted.) *Sales* at ¶ 7. Further, "[i]n reviewing a petition for post[-]conviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph one of the syllabus.

{¶11} Here, Mr. Chesrown attached a self-serving affidavit accusing Mr. Hartline of making the videos of M.G. because "they were of the type that Ronnie Hartline would have

produced." He also alleged that M.G.'s Guardian ad Litem, caseworker, and counselor never indicated that M.G. "had anything bad to say" about him. Additionally, Patty Hartline's affidavit contained hearsay regarding her son's alleged admission that he made the videos of M.G. in the bathroom. She also indicated that she was not present when Mr. Hartline spoke with Mr. Chesrown's trial counsel at the courthouse. We note that, although Mr. Chesrown and Ms. Hartline assert that Mr. Hartline admitted to making the videos of M.G., Mr. Hartline did not submit an affidavit to this effect. Based upon these affidavits, it is impossible to determine whether Mr. Hartline actually admitted to making the videos, or simply told Mr. Chesrown's trial counsel that he was not involved. As such, a claim that Mr. Hartline would have favorably testified on Mr. Chesrown's behalf is mere speculation and does not support his claim of prejudice. *See State v. Mundt,* 115 Ohio St.3d 22, 2007-Ohio-4836, ¶ 115, 132; *see also State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, ¶ 121.

{¶12} Further, Mr. Chesrown's argument regarding M.G.'s juvenile court file is also purely speculative. First, Mr. Chesrown admittedly has no idea whether any exculpatory evidence actually exists in M.G.'s juvenile court file. He states in his brief that "[t]hese people and the records they generated *should have been* a huge source of information and *perhaps* exculpatory evidence on [Mr. Chesrown's] behalf." Second, Audrey Kohrs, a licensed social worker in the State of Ohio, testified that "M.G. said * * * that [she and Mr. Chesrown] were sleeping in the bed together. [M.G.] woke up and [Mr. Chesrown's] hand was underneath her underwear and his fingers were inside her vagina." Further, on cross-examination, Ms. Kohrs admitted that she was unaware of any reports indicating a problem with Mr. Chesrown in M.G.'s juvenile court file. Mr. Chesrown, however, makes a substantial leap in assuming that the absence of any problematic reports somehow proves his innocence, especially in light of the

explicit testimony regarding his actions toward M.G. As stated previously, mere speculation regarding the content of M.G.'s juvenile court file does not support Mr. Chesrown's claim of prejudice. *Mundt* at ¶ 115, 132.

**{¶13}** Upon careful review of the record, we conclude that Mr. Chesrown failed to submit evidentiary materials containing sufficient operative facts to demonstrate that he was prejudiced by his trial counsel's alleged ineffectiveness. Therefore, the trial court did not abuse its discretion in dismissing Mr. Chesrown's petition for post-conviction relief without first holding a hearing.

**{¶14}** Mr. Chesrown's sole assignment of error is overruled.

III.

**{¶15}** In overruling Mr. Chesrown's sole assignment of error, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
WHITMORE, J.
CONCUR.

APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.