[Cite as *State v. D'Agostino*, 2016-Ohio-1282.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 14CA010707 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| TINA D'AGOSTINO | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 10CR080181 |

DECISION AND JOURNAL ENTRY

Dated: March 28, 2016

MOORE, Judge.

{¶1} Defendant-Appellant Tina D'Agostino appeals from the judgment of the Lorain County Court of Common Pleas denying her petition for post-conviction relief without a hearing. We affirm.

I.

{¶2} We previously summarized the history of this case on direct appeal from the criminal convictions as follows:

On the morning of February 27, 2010, [Ms.] D'Agostino and her live-in boyfriend, Steven Augustus, had a heated argument. [Ms.] D'Agostino ultimately retreated to their master bedroom and locked herself in while [Mr.] Augustus was taking a shower. The situation escalated when [Mr.] Augustus tried to gain entry into the bedroom and [Ms.] D'Agostino refused to let him in. [Mr.] Augustus then retrieved several tools from the garage and used the tools to open the bedroom door. When [Mr.] Augustus opened the door, [Ms.] D'Agostino shot him. She then took [Mr.] Augustus' truck and drove off while [Mr.] Augustus stumbled to a neighbor's house for help.

A grand jury indicted [Ms.] D'Agostino on each of the following counts: (1) felonious assault, in violation of R.C. 2903.11(A)(2), and an attendant firearm specification; (2) theft, in violation of R.C. 2913.02(A)(1); and (3) domestic

violence, in violation of R.C. 2919.25(A). Subsequently, the matter proceeded to a jury trial. At trial, [Ms.] D'Agostino presented expert testimony on battered woman's syndrome, and the State presented expert testimony on rebuttal. The jury found [Ms.] D'Agostino not guilty of theft, but guilty of the lesser included offense of unauthorized use of a motor vehicle, in violation of R.C. 2913.03(A). Additionally, the jury found her guilty of felonious assault, that charge's attendant firearm specification, and domestic violence. The trial court sentenced [Ms.] D'Agostino on all counts for a total of eight years in prison.

*State v. D'Agostino,* 9th Dist. Lorain No. 12CA010304, 2014-Ohio-551, ¶ 2-3.

{¶3} Ms. D'Agostino filed a notice of appeal with this Court. There she argued that her trial counsel had provided ineffective assistance. *See id.* at ¶ 5. Specifically, she asserted that trial counsel suffered from medical complications after childbirth that impaired her performance, that trial counsel was ineffective in failing to object to the testimony of the State's rebuttal expert, and that trial counsel was ineffective for stipulating to the admissibility of the State's expert report. *See id.* at ¶ 5, 7, 10. Additionally, Ms. D'Agostino argued that the trial court erred in giving a "duty to retreat" instruction, that the guilty verdicts for felonious assault and domestic violence were against the manifest weight of the evidence, and that the trial court erred in sentencing her on allied offenses. *See id.* at ¶ 25, 28, 46. We concluded all of her arguments were without merit, except for her claim with respect to allied offenses. *See id.* at ¶ 49.

{¶4} While the appeal was pending on the criminal case, Ms. D'Agostino filed a petition for post-conviction relief pursuant to R.C. 2953.21 and a motion to allow further supplementation of the petition. In her petition she argued that she had been denied effective assistance of counsel. She asserted that her trial counsel's "physical and mental difficulties continued to be an impediment to her ability to render effective [assistance] of counsel." She attached several affidavits to her petition in support of her argument. Ms. D'Agostino further maintained that an example of the ineffective assistance caused by trial counsel's unspecified

illness was trial counsel's failure to properly object to the trial court's self-defense instruction. Additionally, Ms. D'Agostino pointed to trial counsel's decision to stipulate to the admissibility of the State's expert report as another example of ineffective assistance. Finally, Ms. D'Agostino maintained that her expert at trial, James R. Eisenberg, Ph.D., would provide evidence of trial counsel's ineffectiveness. She maintained that Dr. Eisenberg believed that trial counsel engaged in insufficient witness preparation, did not understand how to question an expert witness, and failed to emphasize the self-defense implications inherent in his testimony. The State responded in opposition. Subsequently, Ms. D'Agostino filed a motion to supplement the petition with an affidavit of Dr. Eisenberg, which the trial court granted in its ruling on her petition.

{¶5} Prior to the trial court ruling on Ms. D'Agostino's petition, this Court issued its decision in her direct appeal. The trial court, in denying Ms. D'Agostino's petition, concluded that Ms. D'Agostino's arguments with respect to trial counsel's failure to object to the self-defense jury instruction and trial counsel's stipulation to the State's expert report were barred by res judicata. The trial court concluded that Ms. D'Agostino's allegations concerning trial counsel having an undisclosed ailment that impaired her performance were speculative and not supported by sufficient grounds. The trial court also determined that Dr. Eisenberg's testimony mirrored that of his expert report and that Ms. D'Agostino failed to demonstrate that further preparation or a different manner of questioning would have altered the trial result. Thus, the trial court denied her petition without a hearing.

{¶6} Ms. D'Agostino has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED IN DENYING [MS.] D'AGOSTINO'S PETITION FOR POST-CONVICTION RELIEF, FILED PURSUANT TO R.C. [] 2953.21, WITHOUT AN EVIDENTIARY HEARING AS PROVIDED BY SAID STATUTE.

{¶7} Ms. D'Agostino argues that the trial court erred in denying her petition without holding a hearing. Based on Ms. D'Agostino's limited arguments, we do not agree.

{¶8} We begin by noting that it does not appear that Ms. D'Agostino challenges the trial court's conclusion that some of the arguments in her petition were barred by res judicata in light of this Court's opinion in her direct appeal. Accordingly, this opinion will not review those issues.

{¶9} "This Court reviews a trial court's decision to deny a post-conviction relief petition for an abuse of discretion." *State v. Ross,* 9th Dist. Summit No. 27180, 2014-Ohio-2038, ¶ 6. "Likewise, '[w]e review a trial court's decision not to hold a hearing on a petition for post-conviction relief for an abuse of discretion.'" *Id.*, quoting *State v. Chesrown*, 9th Dist. Summit No. 26336, 2014-Ohio-680, ¶ 7. "An abuse of discretion implies unreasonable, arbitrary, or unconscionable conduct by the court." *Chesrown* at ¶ 7, citing *Blakemore* v. *Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶10} "R.C. 2953.21(A)(1)(a) permits a person who has been convicted of a criminal offense to petition the court for post-conviction relief where 'there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * *.'" *Ross* at ¶ 7, quoting R.C. 2953.21(A)(1)(a). "If the trial court agrees, it may 'vacate or set aside the judgment or sentence or [ ] grant other appropriate relief.'" *Ross* at ¶ 7, quoting R.C. 2953.21(A)(1)(a). "Before granting a hearing on a petition * * * , the court shall determine whether there are substantive

grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." R.C. 2953.21(C). "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending." R.C. 2953.21(E).

{¶11} Thus, "[a] hearing is not automatically required for every petition for post-conviction relief ." *Chesrown* at ¶ 8, quoting *State v. Sales,* 9th Dist. Summit No. 23498, 2007-Ohio-4136, ¶ 7. "The trial court serves a gatekeeping function in the post[-]conviction relief process. The gatekeeping function includes the trial court's decision regarding the sufficiency of the facts set forth by the petitioner and the credibility of the affidavits submitted." (Internal quotations and citations omitted.) *Ross* at ¶ 7. "[A] trial court properly denies a defendant's petition for post[-]conviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun,* 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

{¶12} Ms. D'Agostino's petition asserted she was entitled to relief based upon ineffective assistance of counsel. "In evaluating claims of ineffective assistance of counsel, a two-step process is used. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." (Internal quotations and citations omitted.) *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 61.

"Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial * * *." (Internal quotations and citations omitted.) *Id.*

> On the issue of counsel's ineffectiveness, the petitioner has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. In order to overcome this presumption, the petitioner must submit sufficient operative facts or evidentiary documents that demonstrate that the petitioner was prejudiced by the ineffective assistance. To demonstrate prejudice, [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

(Internal citations and quotations omitted.) *Gondor* at ¶ 62. Thus, "[b]efore a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107, 111 (1980). "Broad assertions without a further demonstration of prejudice do not warrant a hearing for all post-conviction petitions. General conclusory allegations to the effect that a defendant has been denied effective assistance of counsel are inadequate as a matter of law to impose an evidentiary hearing." *Id.*

{¶13} Ms. D'Agostino claimed in her petition that "she received ineffective assistance of counsel due to the physical and mental difficulties that [trial counsel] experienced at the time of trial." The basis of this concern appears to stem from the fact that trial counsel requested a continuance of the original trial date because trial counsel was recovering from a difficult surgical child birth. The continuance was granted and nothing in the record reflects that trial counsel requested any further continuances based upon any health issues. *See also D'Agostino,* 2014-Ohio-551, at ¶ 5-8. In her petition, Ms. D'Agostino asserted that, nonetheless, trial counsel's "physical and mental difficulties continued to be an impediment to her ability to render

effective [assistance] of counsel." To support her contention, Ms. D'Agostino presented five affidavits, each from a relative.

{¶14} Each of the affiants averred that trial counsel appeared nervous during trial. Some of the affiants observed trial counsel's hands shaking and trembling. The affiants also provided observations about trial counsel's appearance. Both Ms. D'Agostino's sister and mother observed that trial counsel's "hair was falling out" in "gobs[,]" and that trial counsel appeared to be suffering from an "undisclosed, unknown physical ailment." Ms. D'Agostino's sister also averred that trial counsel's dress and appearance indicated to her that "something was not right with her."

{¶15} In addition, several of the affiants indicated that a conversation with trial counsel's mother caused them concern. Ms. D'Agostino's sister, cousin, and mother averred that they sat near trial counsel's mother who revealed that she was concerned about trial counsel because "she had been sick." Ms. D'Agostino's sister, cousin, father, and mother indicated that trial counsel's mother told them that trial counsel had never tried a domestic violence case before.

{¶16} The affiants who were also trial witnesses expressed concern over how they were prepared for trial and with trial counsel's preparation and performance. Ms. D'Agostino's sister and cousin averred that trial counsel's associate prepared her for her testimony, but only spent less than five minutes doing so. Ms. D'Agostino's mother and father indicated that they had no pretrial preparation for their testimony. Ms. D'Agostino's cousin observed that, during breaks, trial counsel would ask the family how she was doing; Ms. D'Agostino's cousin found this behavior odd and indicative of a lack of confidence. Both Ms. D'Agostino's mother and father averred that trial counsel made "few objections" and Ms. D'Agostino's nephew, who was not a

witness, believed that trial counsel "did not mount a very active defense and * * * did not appear to be fully prepared or have prepared the defense witnesses to testify."

{¶17} We cannot say the trial court abused its discretion in concluding that Ms. D'Agostino failed to present sufficient grounds to demonstrate that any ailment of trial counsel prejudiced Ms. D'Agostino. The record reflects that, during voir dire, trial counsel began by informing the jury of her hand tremors. Specifically she stated, "I'm on a medication that makes my hands shake. That's why I'm nervous. If you see that happening, please don't mind it." Thus, the affiants' observations of nervousness and shaking hands are unsurprising and are explained in the record. Moreover, there was evidence that trial counsel had ample opportunities at trial to voice any concerns she had about proceeding or to request a continuance. Each time the trial resumed following a recess, the trial court asked both counsel if they were both ready to proceed. Each time, both counsel responded affirmatively. Additionally, following the close of evidence, trial counsel indicated that she was ready to proceed to closing argument even though the State indicated it needed more time to prepare.

{¶18} Even assuming that the affiants' observations may have indicated that trial counsel had some sort of ailment, or was recovering from some ailment, those observations do not provide evidence that trial counsel was ineffective or that trial counsel's deficient performance prejudiced Ms. D'Agostino. *See Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, at ¶ 61-62. Ms. D'Agostino has pointed to nothing that would require that trial counsel be in perfect health in order to render effective assistance of counsel.

{¶19} While several of the affiants indicated that they did not believe they received adequate preparation for their testimony, they failed to indicate what additional testimony they could have provided or how that would have benefited Ms. D'Agostino had they been better

prepared. Accordingly, Ms. D'Agostino has not demonstrated that any lack of preparation of those witnesses prejudiced her defense. Further, the affiants' feelings and general concerns about trial counsel's performance do not evidence specific incidents of deficient performance or prejudice that resulted therefrom. We cannot say that the trial court abused its discretion when it concluded that Ms. D'Agostino failed to state "sufficient grounds for her Petition based upon the alleged undisclosed, unknown medical condition[.]"

{¶20} Ms. D'Agostino additionally argues that the affidavit of Dr. Eisenberg evidences the ineffective assistance of trial counsel. Dr. Eisenberg testified as the defense expert at trial. He evaluated Ms. D'Agostino for battered woman's syndrome and provided an opinion in his report. In his report, he concluded that, assuming Ms. D'Agostino's reports of her history were accurate, it was his opinion that Ms. D'Agostino "was a victim of continued domestic violence and was therefore a battered woman at the time of the alleged felonious assault[.]"

{¶21} In his affidavit submitted in support of Ms. D'Agostino's petition, Dr. Eisenberg averred that, as an expert, he was accustomed to a certain amount of pretrial preparation and that such preparation did not occur. He indicated that he evaluated Ms. D'Agostino in December 2010, and prepared a report in February 2011, but only spoke to trial counsel briefly over lunch the day of his testimony in October 2012. Dr. Eisenberg stated he placed phone calls to trial counsel's office that were never returned. However, he did acknowledge that trial counsel was on maternity leave for part of that time.

{¶22} Dr. Eisenberg expressed concern with trial counsel's examination of him at trial, noting that it appeared to him that trial counsel had little experience or training in how to examine an expert in forensic psychology. He found the State's cross-examination to be more skilled. He averred that trial counsel's questioning, "was often confusing" and prevented him

from "clearly provid[ing] a coherent and logical explanation for [Ms.] D'Agostino's conduct and her diagnosis." This "undermined [his] testimony and provided damaging avenues of inquiry for the [p]rosecution on cross-examination." Additionally, Dr. Eisenberg contended that trial counsel failed to emphasize self-defense as a part of trial counsel's theory of the case and that the theory of self-defense should not have been "subsumed by the defense based upon Battered Woman Syndrome."

{¶23} While it is clear that Dr. Eisenberg was dissatisfied with the manner in which he was prepared for trial and the way in which he was questioned at trial, he failed to indicate in his affidavit what other testimony or information he could have provided at trial that would have benefited the defense. The trial court found that Dr. Eisenberg's testimony mirrored his expert report, and, generally speaking, that conclusion is supported by the record before us.

{¶24} To the extent Dr. Eisenberg asserts that trial counsel should have focused more on a theory of self-defense outside the context of battered woman's syndrome, it is unclear what more Dr. Eisenberg believes should have been done. Dr. Eisenberg's report does not make a finding as to whether Ms. D'Agostino acted in self-defense, instead indicating that "it is the trier of fact who will determine whether or not her actions constituted self-defense." Nonetheless, at trial, Dr. Eisenberg did conclude that Ms. D'Agostino was a battered woman and that she "suffered abuse from * * * [Mr.] Augustus[.] * * * That this was over an extended period of time, and that on the date in question [he] believe[d] she was in a situation where she believed that she was in danger of imminent harm and acted accordingly." To this extent, his expert opinion was placed squarely before the jury.

{¶25} Further, it appears that trial counsel at least attempted to impart to the jury that, even if Ms. D'Agostino had fabricated the abuse and, thus, could not be classified as a battered

woman, she nonetheless might still have acted in self-defense. On cross-examination, the State challenged Dr. Eisenberg's findings that Ms. D'Agostino was a battered woman because his findings were based almost entirely on Ms. D'Agostino's own reporting. On redirect, trial counsel asked if Dr. Eisenberg would still think Ms. D'Agostino was acting in self-defense even if she could not be classified as a battered woman. Dr. Eisenberg responded that, "Well, that goes right to the jury, but I certainly would think that that speaks to some of the elements of imminent threat of harm to oneself regardless of whether she is a battered woman or not."

**{¶26}** Finally, trial counsel in her closing argument repetitively discussed self-defense, both in the context of battered woman's syndrome and separately. Trial counsel argued that part of the self-defense test was "met even without any evidence of Battered Woman Syndrome. Even if she was never abused, any reasonable person would be in fear at that time. But it is further bolstered because she did suffer from Battered Woman Syndrome." Later in closing argument, trial counsel stated that, "Now, I haven't talked a whole lot about Battered Woman Syndrome. I'm getting to the experts here, because I think this is a straight self-defense case. I think it is pretty clear cut. Somebody is breaking into a door with a hammer, yelling that he is going to kick your a\*\*, I think it is pretty clear cut self-defense if you defend yourself, whether he intended to do those things or not." Given the foregoing, including the lack of specificity in Dr. Eisenberg's affidavit, we cannot conclude the trial court abused its discretion in determining that a hearing was not warranted on Ms. D'Agostino's petition. Ms. D'Agostino failed to supply "sufficient operative facts to establish substantive grounds for relief." *Calhoun,* 86 Ohio St.3d 279, at paragraph two of the syllabus.

**{¶27}** Ms. D'Agostino's sole assignment of error is overruled.

III.

**{¶28}** Ms. D'Agostino's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

MICHAEL J. DUFF, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.